IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAWRENCE SHAFRON, | ) | CASE NO. 1:11 CV 732 |
| | ) | |
| Plaintiff, | ) | JUDGE LESLEY WELLS |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| AVIVA LIFE AND ANNUITY | ) | |
| COMPANY, *et al.*, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Defendants. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -3-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
    A.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -5-
        1.    Judgment on the pleadings . . . . . . . . . . . . . . . . . . . . . . . -5-
        2.    Amendment of complaint . . . . . . . . . . . . . . . . . . . . . . . . -5-
            a.    Legal standard for Rule 15(a) . . . . . . . . . . . . . . . . -5-
            b.    Legal standard for deciding futility of amendment . . . . . . -6-
    B.    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
        1.    Motion to amend . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -7-
            a.    Parties' arguments . . . . . . . . . . . . . . . . . . . . . . . . . -7-
            b.    Standard of review . . . . . . . . . . . . . . . . . . . . . . . . . -8-
            c.    Equitable estoppel . . . . . . . . . . . . . . . . . . . . . . . . . -9-
            d.    Prejudice to Aviva . . . . . . . . . . . . . . . . . . . . . . . . . -10-
            e.    Futility . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -11-
               i.    Breach of contract . . . . . . . . . . . . . . . . . . . . -11-
               ii.    Duty of good faith . . . . . . . . . . . . . . . . . . . . -18-
               iii.    Negligent misrepresentation . . . . . . . . . . . . . . . . -19-
        2.    Motion for judgment on the pleadings . . . . . . . . . . . . . . . . . . . -22-
            a.    Negligence and economic loss . . . . . . . . . . . . . . . . . . -22-
            b.    Fiduciary duty . . . . . . . . . . . . . . . . . . . . . . . . . . . -24-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -26-

## Introduction

Before me by referral[1] in this diversity action seeking damages for negligence and breach of fiduciary duty in the sale of an annuity is a motion by defendant Aviva Life and Annuity Company[2] for judgment on the pleadings under Federal Rule of Civil Procedure 12(c).[3] Plaintiff Lawrence Shafron opposes the motion and has alternatively moved to amend the complaint.[4] Aviva has replied in support of its motion for judgment on the pleadings and in opposition to the motion to amend,[5] to which Shafron replied.[6]

For the reasons that follow, I will recommend that Aviva's motion for judgment on the pleadings be granted as explained below and that Shafron's motion to amend be granted as more fully detailed below.

---

[1] ECF # 50.

[2] As noted by Aviva, American Investors Life Insurance Company, which was originally also named as a defendant, has since merged into Aviva and no longer exists. *See*, ECF # 45 at 1 n.1. The other named defendants – Brian J. Adair and Adair Financial Group – are not parties to the present motion for judgment on the pleadings.

[3] ECF # 45.

[4] ECF # 48.

[5] ECF # 49.

[6] ECF # 54.

## Facts

For present purposes, the relevant facts are simply stated.

Shafron's present complaint claims that Aviva was negligent,[7] or breached a fiduciary duty[8] to Shafron, in selling him an Aviva equity-indexed annuity. Although that purchase was later canceled in accordance with the annuity's own terms, Shafron maintains that he nevertheless suffered financial damage.[9]

Aviva contends in its motion for judgment on the pleadings that both claims "fail to state a viable legal theory [for recovery of damages] as a matter of Ohio law."[10] In particular, it argues first that Shafron's negligence claim must fail under Ohio's economic loss doctrine, which states that a plaintiff who suffers only economic loss because of another's negligence "'has not been injured in a manner which is legally cognizable or compensable.'"[11] It further asserts that the breach of fiduciary duty claim fails for "merely alleg[ing] the existence of an arms-length relationship with Aviva that does not give rise to fiduciary duties" and "making no allegations regarding some special circumstance, trust or confidence" that would give rise to a fiduciary duty.[12]

---

[7] ECF # 1 at ¶¶ 23-24.

[8] *Id.* at ¶¶ 27-31.

[9] *Id.* at ¶ 32.

[10] ECF # 45 at 3.

[11] *Id.* at 4, quoting *Corporex Dev. & Constr. Mgmt., Inc. v. Shook, Inc.*, 106 Ohio St. 3d 412, 414, 835 N.E.2d 701, 704 (2005) (internal quotation omitted).

[12] *Id.* at 7-8.

As noted, Shafron opposes the motion for judgment on the pleadings, or alternatively, seeks leave to amend the complaint.

Initially, as to the motion for judgment on the pleadings, Shafron states that his negligence claim is not barred by the economic loss doctrine because the complaint's allegation of unspecified losses includes non-economic losses such as physical pain and suffering, embarrassment and humiliation.[13] Further, he contends that Aviva owed him a fiduciary duty under Ohio administrative regulations imposing a duty on insurers and on Aviva's own suitability policy.[14]

Shafron further asserts that recasting his first "negligence" claim as a breach of contract claim would not alter any factual allegation but would permit the claim for purely economic loss to go forward.[15] In addition, he argues that amending the complaint to include a claim for negligent misrepresentation would also permit the economic losses to go forward without altering the facts already alleged.[16]

---

[13] ECF # 48 at 4.

[14] *Id.* at 5-6.

[15] *Id.* at 8.

[16] *Id.* at 9.

## Analysis

**A.    Standards of review**

*1.    Judgment on the pleadings*

In *Smith v. BAC Home Loans Servicing, LP*[17] the Sixth Circuit recently restated the

standards applicable to motions to dismiss:

> "To survive a motion to dismiss, a complaint must contain sufficient factual
> matter, accepted as true, to 'state a claim for relief that is plausible on its
> face.'" "The plausibility requirement is not a "probability requirement," but
> requires "more than a sheer possibility that the defendant has acted
> unlawfully." Federal Rule of Civil Procedure 8 provides the general standard
> of pleading and only requires that a complaint "contain ... a short plain
> statement of the claim showing that the pleader is entitled to relief." "Rule 8
> marks a notable and generous departure from the hyper-technical,
> code-pleading regime of a prior era, but it does not unlock the doors of
> discovery for a plaintiff armed with nothing more than conclusions." In
> deciding a motion to dismiss under Rule 12(b)(6), "a court should assume
> the[ ] veracity" of "well-pleaded factual allegations."[18]

*2.    Amendment of complaint*

*a.    Legal standard for Rule 15(a)*

Rule 15(a) of the Federal Rules of Civil Procedure provides that when a party seeks

to amend its pleading by leave of court, "leave shall be freely given when justice so

requires."[19] The purpose of the Rule "is to reinforce the principle that cases should be tried

---

[17] *Smith v. BAC Home Loans Servicing, LP*, ___ F. App'x ___, 2014 WL 169573
(6th Cir. Jan. 15, 2014)

[18] *Id.*, at *1 (citations omitted).

[19] Fed. R. Civ. P. 15(a).

on their merits rather than on the technicalities of pleadings."[20] Further, the Sixth Circuit prefers "liberality in allowing amendments to a complaint."[21]

Although the Rule favors a policy of permitting leave to amend, the Court's permission is not automatic. The Court, in its discretion, may balance several factors before deciding whether to grant a party leave to amend its pleading. In *Foman v. Davis*,[22] the Supreme Court provided a general standard for federal courts to use in applying Rule 15(a):

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason – such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. – the leave sought should, as the rules require, be "freely given."[23]

b.    *Legal standard for deciding futility of amendment*

The Court may deny a motion to amend a party's pleadings pursuant to Rule 15(a) if the proposed amendment could not withstand a motion to dismiss.[24] "To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain either direct or inferential allegations

---

[20] *Janikowski v. Bendix Corp.*, 823 F.2d 945, 951 (6th Cir.1987) (quoting *Tefft v. Seward*, 689 F.2d 637, 639 (6th Cir.1982)).

[21] *Janikowski*, 823 F.2d at 951 (quoting *Moore v. City of Paducah*, 790 F.2d 557, 562 (6th Cir.1986)).

[22] *Foman v. Davis*, 371 U.S. 178 (1962).

[23] *Id.* at 182.

[24] *Neighborhood Dev. Corp. v. Advisory Council on Historic Preservation, Dep't of HUD, City of Louisville*, 632 F.2d 21, 23 (6th Cir.1980).

respecting all the material elements to sustain a recovery under some viable legal theory."[25] Furthermore, "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss."[26] A complaint should not be dismissed unless it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."[27]

## B.    Application of standards

Because the proposed amendment represents an attempt to cure alleged defects in the original complaint that form the basis for Aviva's motion for judgment on the pleadings, I will initially consider the motion to amend before addressing the motion for judgment on the pleadings.

### 1.    *Motion to amend*

#### a.    *Parties' arguments*

Aviva argues that Shafron's motion to amend should be denied for three reasons: (a) because it is untimely, (b) because it would prejudice Aviva by delaying resolution of the case, and (c) because it would be futile.

As to the timeliness argument, Aviva asserts that Shafron should not receive leave to amend the complaint because he earlier represented – in opposition to Aviva's attempt to

---

[25] *Mezibov v. Allen*, 411 F.3d 712, 717 (6th Cir.2005).

[26] *Id.*

[27] *Directv, Inc. v. Treesh*, 487 F.3d 471, 476 (6th Cir.2007) (quoting *Ricco v. Potter*, 377 F.3d 599, 602 (6th Cir.2004)).

amend – that the deadline to amend pleadings in this case has expired.[28] Further, Aviva asserts that the same reasons given by this Court for not permitting Aviva's amendment, such as prejudice to the other party and delay in the proceedings, would now preclude Shafron's amendment.[29] It also argues that the amendments would be futile for a number of reasons that will be addressed below.

Shafron, in response to the non-futility arguments, contends that his proposed amendment does not add additional parties or require additional discovery, but merely "repackages" the already-pled facts into additional claims, and so would not delay resolution of the case.[30] Moreover, he argues that courts favor a liberal interpretation of the rules for amendment so as to 'reinforce the principle that cases are to be tried on their merits rather than on the technicalities of pleadings."[31]

b.    *Standard of review*

As noted above, although Rule 15(a) is generally viewed as favoring permission to amend, that permission is not automatic. Rather, under the case authority cited previously, the court must consider factors such as delay, prejudice, and futility when considering a motion to amend. In that regard, I consider each reason offered by Aviva as to why the

---

[28] ECF # 49 at 8-9.

[29] *Id.*

[30] ECF # 54 at 1.

[31] *Id.* at 2.

proposed amendment could not survive a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief could be granted.

c.     *Equitable estoppel*

First, Aviva argues that Shafron should be equitably estopped from amending the complaint because granting Shafron's motion to amend would be contrary to the statements he made earlier in opposition to Aviva's prior motion to amend. In particular, Aviva points to Shafron's statement that the time for amendment in this case was over.

To invoke equitable estoppel under Ohio law,[32] a party needs to demonstrate four essential elements:

1.     There must be a representation by words, acts, or silence;

2.     The representation must communicate some fact or state of affairs in a misleading way;

3.     The representation must induce actual reliance by the other party, and such reliance must be reasonable and in good faith; and

4.     The other party would suffer prejudice if the representing party were not estopped or precluded from contradicting the earlier representation.[33]

-------

[32] In a diversity case, state law governs the adjudication of substantive questions and federal law controls on procedural issues. Equitable estoppel is a state substantive law question. *See*, *Pippert v. Gundersen Clinic, Ltd.*, 300 F. Supp. 2d 870, 875 (N.D. Iowa 2004) (citing *Erie Railroad Co. v. Thompkins*, 304 U.S. 64 (1938)).

[33] *Floch v. Davis*, No. 2013-T-0021, 2013 WL 6020793, at *5 (Ohio Ct. App. Nov. 12, 2013) (citations omitted).

Here, even assuming that Shafron misrepresented the fact that discovery in this case had closed,[34] Aviva has not shown how equitable estoppel applies here. In particular, Aviva has made no attempt to show that it actually relied on that purported misrepresentation, nor has it attempted to show that such reliance would have been reasonable. The facts about the closing of discovery could readily be established by any party by examining the applicable law and relevant court orders.[35]

### d.    *Prejudice to Aviva*

Aviva's essential argument as to prejudice is that "if Aviva's [prior] efforts [to amend] were denied [by the Court] on the basis of prejudice and delay, the Court should equally deny Shafron's motion to amend on the same grounds."[36]

In fact, as Shafron points out, the motion to amend here does not seek to add a new party and new claims that would require additional discovery prolonging resolution of the case. Shafron merely seeks to re-caption the claims already familiar to Aviva. As Shafron states, "Aviva has been on notice of Mr. Shafron's claims, even if allegedly mislabeled, and, thus, no new discovery is required and no delay will be necessitated."[37]

Aviva has, therefore, made no showing of prejudice flowing from the proposed amendment. Simply asserting that the Court should treat the present motion to amend in the

---

[34] The issue of prejudice is discussed below.

[35] *See*, *Marks v. Newcourt Credit Group*, 342 F.3d 444, 456 (6th Cir. 2003).

[36] ECF # 49 at 9 n.8.

[37] ECF # 54 at 4.

-10-

same way as the prior motion does not address the distinctly different situation presented by Shafron's motion.

*e.*     *Futility*

Most importantly, Aviva claims that the proposed amendment would be futile because the proposed new claims would not survive a Rule 12(b)(6) motion to dismiss.[38] The proposed new claims – breach of contract, duty to act in good faith, and negligent misrepresentation – are addressed individually below.[39]

i.     Breach of contract

The proposed count two of the amended complaint states that under its contract and suitability policy, Aviva had a duty to examine and review Shafron's "financial situation and needs" and then ensure that he "was placed in a suitable investment vehicle."[40] It then contends that Aviva breached "this duty by permitting [Shafron] to be placed in an unsuitable investment vehicle."[41]

Aviva argues that: (1) by admittedly canceling the contract, Shafron ended any contractual relationship with Aviva and so cannot now claim some contractual duty based on the terms of a policy he did not purchase; and (2) even if there was a valid contract,

---

[38] ECF # 49 at 9-13.

[39] The proposed amended complaint (ECF # 48-1) states five counts: count one (negligence), count two (breach of contract), count three (negligent misrepresentation), count four (breach of fiduciary duty), and count five (breach of good faith and fair dealing).

[40] ECF # 48-1 at ¶ 27.

[41] *Id.* at ¶ 28.

Shafron has not pled with specificity the particular contract provision breached with the specificity necessary for a breach of contract claim.[42]

Whatever the merit of the first argument, Aviva correctly notes that for a breach of contract claim to survive a Rule 12(b)(6) motion to dismiss under the pleading requirements of *Ashcroft v. Iqbal*,[43] a plaintiff must adequately plead sufficient facts giving rise to the claim or the specific contract provision breached.[44] In other words, while a court must construe the complaint in the light most favorable to the plaintiff, "the claim must be supported by factual allegations such that it is 'plausible on its face.'"[45] Claims are facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[46] Thus, a mere conclusory claim that a defendant "breached" some unspecified obligation will fall short of stating a facially plausible claim for relief under the standard of *Iqbal*.[47]

The proposed amended complaint here specifically claims: (a) under the "contract and suitability policy incorporated therein;" (b) Aviva had a "duty to examine and review

---

[42] ECF # 49.

[43] *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

[44] ECF # 49 at 11, citing *Jackson v. Cleveland Clinic Foundation*, No. 1:11 CV 1334, 2011 WL 4007732 (N.D. Ohio Sept. 9, 2011).

[45] *Flex Homes, Inc. v. Ritz-Craft Corp. of Michigan, Inc.*, 721 F. Supp. 2d 663, 670 (N.D. Ohio 2010) (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (2007)).

[46] *Iqbal*, 556 U.S. at 678.

[47] *Id.*

-12-

[Shafron's] financial situation and needs, and to ensure that [he] was placed in a suitable investment vehicle;"[48] and (c) that Aviva breached that contractual obligation by "permitting [Shafron] to be placed with the unsuitable Aviva Annuity."[49]

Three comparatively recent decisions from courts in this district on breach of contract claims evaluated on Rule 12(b)(6) motions to dismiss provide instruction as to whether the complaint stated in the proposed amendment is sufficient.

In *Jackson v. Cleveland Clinic Foundation*,[50] a case cited by Aviva, Judge Oliver found that [the City of] Cleveland had not sufficiently pled a plausible claim that the Cleveland Clinic had breached a "contract" to provide medical services through Huron Road Hospital.[51] The purported contract there was alleged to be between the State of Ohio and the Cleveland Clinic and was allegedly formed when the Cleveland Clinic accepted over $1.4 billion in tax exempt funds from the State.[52] Cleveland argued that accepting the state money had created a contract obligating the Cleveland Clinic to continue to operate Huron Road Hospital.[53] Judge Oliver ruled that the complaint "failed to allege facts or a specific

---

[48] ECF # 48-1 at ¶ 27.

[49] *Id.* at ¶ 28.

[50] *Jackson*, 2011 WL 4007732.

[51] *Id.*, at *6.

[52] *Id.*

[53] *Id.*

-13-

contract provision that required the 'delivery of essential medical services' at Huron, or a provision that indicates that closing Huron would breach this alleged contract."[54]

In *GE Electric Company v. S&S Sales Company*,[55] S&S contended in a counterclaim that GE had breached a contract by requiring S&S to purchase a mix of lighting products rather than any single product.[56] But the only contract at issue was the contract GE cited in its complaint by which S&S agreed to pay for lighting products that GE sold and shipped.[57] On that record, Judge Nugent found that S&S "fail[ed] to identify any provision of the contract that GE allegedly breached,"and so granted GE's Rule 12(b)(6) motion to dismiss.[58]

Finally, in *Faktor v. Lifestyle Lift*,[59] Judge Gwin considered a Rule 12(b)(6) motion to dismiss a breach of contract claim on substantially similar grounds to that argued here by Aviva. Much like Aviva, defendant Lifestyle Lift argued that a breach of contract claim failed to set forth sufficient facts to survive a motion to dismiss.[60] Judge Gwin concluded that allegations that Lifestyle promised a normal recovery time of a few days, but that the actual

---

[54] *Id.*

[55] *GE Elec. Co. v. S & S Sales Co.*, No. 1:11cv00837, 2011 WL 4369045 (N.D. Ohio Sept. 19, 2011).

[56] *Id.*, at *1.

[57] *Id.*

[58] *Id.*, at *2.

[59] *Faktor v. Lifestyle Lift*, No. 1:09-CV-511, 2009 WL 2256263 (N.D. Ohio July 22, 2009).

[60] *Id.*, at *5.

recovery was longer and so a breach, were more specific than a mere assertion that the defendant unlawfully harmed me.[61] Indeed, *Faktor* also noted, as is the case here, that the plaintiffs cited "multiple representations that they say were incorporated into their contracts with the defendants and say that defendants breached the promises in those statements."[62] The Court found that allegation in *Faktor* sufficient under Rule 8 as interpreted by *Bell Atlantic v. Twombly* and *Iqbal* to survive a motion to dismiss.[63]

On review of the cases cited above, I conclude that the present case is analogous to *Faktor*.[64] As noted, Shafron alleges here that under the contract incorporating the suitability policy, Aviva had a duty to examine Shafron's situation and needs to insure his placement in a suitable investment, and that Aviva breached this provision of the contract. Thus, under the pleading standards of *Iqbal* and *Twombly*, and consistent with Judge Gwin's reasoning in *Faktor*, Shafron sufficiently pled the proposed count two of the submitted amended complaint and so should survive a Rule 12(b)(6) motion to dismiss.

Aviva also makes two additional arguments regarding the alleged futility of the breach of contract claim: (1) that the amendment would be futile because there was no contract,

---

[61] *Id.*

[62] *Id.*

[63] *Id.*

[64] *See*, *id.*, at *6. Plaintiffs in *Faktor* alleged that "by virtue of its *written contracts* with its patients, Lifestyle Lift was contractually obligated to provide surgical procedures consistent with the foregoing promises and representations." (Emphasis original in opinion).

-15-

because of Shafron's admitted cancellation of the contract,[65] and (2) that the amendment would be futile because any breach here would necessarily have happened before the contract's formation.[66]

As the argument that the cancellation of the contract voided the contract *ab initio*, Aviva misconstrues the so-called "free look" provision of the contract. This provision, which exists by statute in many states, permits a policy holder to cancel a contract and receive a full refund if the policy holder acts within the window afforded by the "free look."[67] Even with that provision in place, the contract becomes effective when the insured who paid the contractual premium and signed the application receives the policy, at which time the free look period begins.[68]

While some courts have described the cancellation of a policy under the free look provision as "voiding" the policy from the beginning,[69] this references the fact that a cancellation under the free look provision of Ohio law will result in a "full refund of all premiums" previously paid and not merely the termination of any obligation to make future

---

[65] ECF # 49 at 9-10.

[66] *Id.* at 11.

[67] *See*, *Prusky v. Prudential Ins. Co.*, No. Civ.A. 00-2783, 2001 WL 34355665, at *19 ¶ 202 (E.D. Pa. Oct. 30, 2001) (construing Pennsylvania law).

[68] *Id.* at ¶¶ 201-212.

[69] *See*, ECF # 49 at 10 (citing cases).

-16-

payments after the free look cancellation,[70] and certainly not as precluding the possibility of an actionable breach of the contract arising antecedent to the cancellation. As Ohio's codification of the Uniform Commercial Code (which applies to terms of insurance contracts not defined in the agreement)[71] states, the use of terms like recision or cancellation of a contract, unless expressly stated to the contrary, is not to be understood as renouncing or discharging any claim for a breach arising antecedent to the cancellation.[72]

Next, Aviva contends that any obligation to insure suitability by reviewing Shafron's financial condition and needs necessarily and inherently relates solely to pre-contractual matters and so cannot form the basis of a breach of contract action.[73] Although Shafron has not dealt with this allegation,[74] it appears that the claim here involves an asserted breach of a warranty of suitability. In Ohio, representations made by a seller during the negotiations leading to the formation of a contract that are "made part of the basis of the bargain" can

---

[70] *See*, Ohio Admin. Code § 3901-6-05(F)(1).

[71] *Carolina Casualty Ins. Co. v. v. Canal Ins. Co.*, __ F. App'x __, 2014 WL 114667, at *3 (6th Cir. Jan. 14, 2014).

[72] Ohio Rev. Code § 1302.94; accord, *Roth Steel Products v. Sharon Steel Corp.*, 705 F.2d 134, 151 n.36 (6th Cir. 1983) (applying Ohio codification of UCC, plaintiffs' cancellations of purchase orders did not operate as a waiver of right to assert claims for breach of contract occurring prior to cancellations).

[73] ECF # 49 at 11.

[74] *See*, ECF # 54 at 5-7.

-17-

form the basis of a breach of warranty claim, which is contractual in nature.[75] Here, without addressing the merits of the proposed claim, Shafron has pled that Aviva made representations during the negotiations as to the suitability of the investment for Shafron that were then incorporated into the contract and that this provision of the contract or warranty was subsequently breached, thereby causing damage. Similar to the reasoning stated above, this is sufficient to state a claim for relief that would survive a challenge under Rule 12(b)(6), and so is not futile.

ii.      Duty of good faith

Similar to the contract voiding argument addressed above, Aviva contends that amending the complaint to include a breach of duty to deal in good faith would likewise be futile because "no contract exists" between Shafron and Aviva due to Shafron's voiding of the contract.[76] As Aviva notes, the duty to deal in good faith arises only where a contract exists between the insurer and the insured, and thus operates to protect the insured's right to receive the "'benefits that the insured reasonably might have expected to flow from the contract or contractual relationship.'"[77]

For the reasons stated above, Shafron's cancellation of the policy under the free look provision did not retroactively abolish the existence of a contract between its formation at

---

[75] *Godec v. Bayer Corp.*, No. 1:10-CV-224, 2011 WL 5513202, at *4 (N.D. Ohio Nov. 11, 2011) (citations omitted).

[76] ECF # 49 at 11-12.

[77] *Id.* at 12 (quoting *Buckeye Union Ins. Co. v. State Farm Auto Ins. Co.*, 1997 WL 180278, at *5 (Ohio Ct. App. April 16, 1997)).

delivery and the cancellation. That said, like the antecedent breach of contract situation described earlier, cancellation of the contract here after it was formed with the right to receive a full refund of all premiums paid from the beginning does not preclude a claim that prior to cancellation Aviva breached a duty to deal with Shafron in good faith.

iii.    Negligent misrepresentation

Finally, Aviva maintains that permitting Shafron to amend his complaint to state a claim for negligent misrepresentation is futile because Shafron "has failed to allege that Aviva made any affirmative misrepresentations."[78] Specifically, Aviva asserts that because "there is no allegation that Aviva affirmatively and negligently misrepresented the suitable nature of the annuity product to [Shafron]," this count does not state a claim for relief.[79]

Alternatively, Aviva contends that even if it were determined that Shafron did make such an allegation of an affirmative misrepresentation, any such statement would concern the future performance of the annuity.[80] Because under Ohio law a negligent misrepresentation claim must concern only "'past or existing facts, not promises or representations relating to future actions or conduct,'" Aviva maintains that the proposed claim fails to state a claim for relief.[81]

_____

[78] *Id.* at 12.

[79] *Id.* at 13.

[80] *Id.*

[81] *Id.* (quoting *GEM Indus., Inc. v. Sun Trust Bank*, 700 F. Supp. 2d 915, 923 (N.D. Ohio 2010)).

Proposed count three contends that Adair, acting as an agent of Aviva, made negligent misrepresentations to Shafron concerning (1) the surrender charges that apply to this contract, and (2) the suitability of the investment, and that Shafron relied on those misrepresentations to his detriment.[82] The proposed amended complaint specifically alleges that Adair, as agent for Aviva, informed Shafron that there were no surrender charges when actually such charges were applicable and further alleges that Adair supplied Shafron with an Aviva's suitability worksheet, which allegedly contains representations by Adair and Aviva on which Shafron relied.[83]

Clearly, as to any representations regarding what, if any, surrender charges were involved, such a claim is based on an existing fact, and does not involve a promise of future action. While the charge might not come due until a future occurrence at a later date, the obligation to pay it is alleged to have been in existence – and misrepresented – at the time of the contract formation. As to the claim that Aviva misrepresented the suitability of the investment, Shafron observes that this aspect of the claim involves, at least in part, the claimed misrepresentation that there were no surrender charges when there actually were – a misrepresentation Shafron contends contributed to the investment being unsuitable.[84]

Plainly, to the extent that the claim of a misrepresentation of suitability involves the assertion that the investment was affirmatively represented by Adair, as agent for Aviva, to

---

[82] ECF # 48 at ¶¶ 31-34.

[83] *Id.* at ¶¶ 34-36.

[84] ECF # 54 at 8.

have no surrender charges when it actually did have such charges, the claim should survive a Rule 12(b)(6) motion to dismiss, and so is not futile.

Finally, distinct from suitability and surrender charges, Shafron's proposed amended complaint alleges negligent misrepresentation of the consequences of purchasing the annuity.[85] Shafron does not plead specifics facts as to what the consequences are. Such a cursory allegation cannot survive a motion to dismiss.

Aviva's arguments, presented in an extended footnote, that this negligent misrepresentation count must fail because Adair was not an agent of Aviva[86] is more properly raised in connection with summary judgment under Rule 56 and not here. While Aviva would have no liability for any statements made by Adair if it is shown that Adair was not acting as an agent of Aviva, that conclusion presupposes uncontroverted evidence in the context of a Rule 56 motion. At present, in the context of a Rule 12(b)(6) motion to dismiss, where the question is whether the pleadings have stated a plausible claim for relief, it is undeniable that by pleading that Adair was an agent of Aviva,[87] Shafron has plausibly stated a claim for relief against Aviva arising from the purported negligent misrepresentations of its alleged agent.

---

[85] *See*, ECF # 49 at 12 n.12.

[86] *See*, ECF # 49 at 12 n.12.

[87] ECF # 48-1 at ¶ 31.

## 2.    *Motion for judgment on the pleadings*

Aviva's motion for judgment on the pleadings argues that the two major counts of the complaint prior to the most recent motion to amend fail to state a claim upon which relief may be granted. In particular, Aviva asserts (1) that Shafron's claim that Aviva was negligent fails because under Ohio's economic loss doctrine a person who sustained only economic injuries cannot recover damages for negligence,[88] and (2) that Shafron's claim that Aviva breached a fiduciary duty fails because, as a matter of law, Aviva and Shafron entered into an arms length transaction that imposed no fiduciary duty on Aviva.[89] These arguments, along with Shafron's responses, are addressed individually below.

### a.    *Negligence and economic loss*

While accepting the basic point that Ohio precludes an action for negligence from one who suffered only economic loss, Shafron maintains that his complaint avers that he suffered more than economic loss, and so Aviva should not receive judgment on the pleadings on the negligence count.[90] In that regard, he contends that the complaint alleges that as a result of Aviva's negligence Shafron "incurred extensive surrender charges, the loss of living benefit riders, and losses totaling in excess of $600,000."[91] Shafron states that the term "losses" in

---

[88] ECF # 45 at 4-6.

[89] *Id.* at 6-9.

[90] ECF # 48 at 4.

[91] *Id.* (quoting ECF # 1 at ¶ 25).

that section, read most favorably to him, means "tangible physical pain and suffering, embarrassment, humiliation, distress, as well as other physical injury."[92]

Aviva, however, notes that the only losses specifically pled in the complaint – surrender charges and the loss of living benefit riders – are purely economic losses.[93] It also notes that Shafron's initial disclosures – required by Rule 26(a) to contain a computation of each category of damages claimed – merely put forth the details of damages resulting from surrender charges, commission charges, the loss of living benefit riders, and the loss of value of the annuity.[94] As such, Aviva asserts, the specific recitation of damages in the initial disclosures "flatly contradicts the strained reading of the Complaint" by which Shafron maintains that he has pled non-economic loss.[95]

Shafron's negligence count cannot survive Aviva's Rule 12(b)(6) motion because Shafron has alleged only economic loss and such loss is legally insufficient to support such a claim. Under *Iqbal*, a plain reading of the single, unmodified word "losses" in the complaint, coming after very specific contentions of economic loss, is, at best, a conclusory allegation that does not put Aviva on notice that in addition to the articulated, particular

---

[92] *Id.*

[93] ECF # 49 at 4.

[94] *Id.* (quoting Shafron initial disclosures).

[95] *Id.* at 4-5.

economic losses it is also alleged to be liable for specific non-economic damages for things like physical pain.[96]

b.    *Fiduciary duty*

Here, Aviva contends that Ohio law provides that, "'[a]bsent special circumstances, no fiduciary relationship exists between an insurer and insured.'"[97] While, again, seeming to accept this rule, Shafron argues that such a duty is created here by (1) Aviva's contract/suitability policy or (2) Ohio statute.[98]

In that regard, Shafron asserts that Ohio Administrative Code §§ 3901-6-05 and 3901-6-13 impose a duty on insurers to "ensure that customers such as Shafron are being provided with suitable investments."[99] This requirement that an insurer "follow certain suitability guidelines for the benefit of its customers," when coupled with Aviva's own suitability guidelines, are sufficient, Shafron alleges, to state a claim for relief on breach of fiduciary duty.[100]

That said, however, Aviva notes that the Fifth Circuit rejected a nearly identical argument that an insurer's own internal suitability policy created a fiduciary duty. In *Allstate*

---

[96] *See*, *Iqbal,* 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555) (a pleading that offers "'labels and conclusions'" is insufficient).

[97] ECF # 49 at 6 (quoting Young, Ohio Ins. Coverage § 11:12 (2012)).

[98] ECF # 48 at 5.

[99] *Id.* at 6.

[100] *Id.*

*Life Insurance Co. v. Parnell*,[101] the Fifth Circuit found that there was "no ... authority supporting the proposition that the mere existence of an internal guideline can create a fiduciary duty."[102] This is so, at least in part, because "[a] fiduciary relationship is not unilaterally created; rather, both parties must understand that a special trust or confidence has been reposed in the relationship."[103]

Moreover, as Aviva also notes, the requirements of the Ohio Revised Code state what all insurers owe to all customers, and so provide for an ordinary duty of care, the breach of which would give rise to a negligence claim, and not an action for breach of a fiduciary duty.[104] This allegation, Aviva argues, thus does not rise to claiming that any "special trust or confidence" was placed in the particular relationship between Shafron and Aviva such as would be required to find that there was a fiduciary duty.[105]

Aviva's arguments are well-taken. As the Sixth Circuit concluded in upholding the dismissal of a fiduciary duty claim against an insurer, the relationship between the seller of insurance and the potential buyer "possesses the qualities of a typical arms-length transaction, in which the seller often possesses more experience in the item to be sold and

---

[101] *Allstate Life Ins. Co. v. Parnell*, 292 F. App'x 264 (5th Cir. 2008).

[102] *Id.* at 273.

[103] *Scotts Co. v. Liberty Mut. Ins. Co.*, 606 F. Supp. 2d 722, 738 (S.D. Ohio 2009).

[104] ECF # 49 at 7-8.

[105] *Id.*

the buyer typically relies on the seller's representations. But this is insufficient in and of itself to establish a relationship of trust."[106]

Shafron's claim in the complaint that Aviva breached a fiduciary duty is insufficient to state a claim upon which relief may be granted.

## Conclusion

For the reasons stated above, I recommend the granting of Aviva's motion for judgment on the pleadings.[107] I further recommend that Shafron's motion to amend the complaint also be granted to the extent explained above.[108]

Dated: January 30, 2014                              s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[109]

---

[106] *Greenberg v. Life Ins. Co. of Virginia*, 177 F.3d 507, 521-22 (6th Cir. 1999).

[107] ECF # 45.

[108] ECF # 48.

[109] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).